UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
M.S. and J.S., individually and on behalf of M.S., :
:
                Plaintiffs-Appellants, :
: **MEMORANDUM & ORDER**
                -against- :
: 13-cv-3719 (RRM) (VMS)
NEW YORK CITY DEPARTMENT OF :
EDUCATION, :
:
                Defendant-Appellee. :
:
------------------------------------------------------------ x

**Scanlon, Vera M., United States Magistrate Judge:**

       Plaintiffs bring a motion for discovery to depose two unnamed employees of Defendant, pursuant the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 et seq., which states that the Court "shall hear additional evidence at the request of a party." Id. § 1415(i)(2)(C). For the reasons stated herein, Plaintiffs' motion for discovery is granted in part and denied in part.

     **I.**     **BACKGROUND**

       The following facts are drawn from the pleadings and are for background purposes only. Plaintiff M.S., who is classified as having autism, is a minor and a student residing within the school district of the Defendant New York City Department of Education ("DOE"). See Am. Compl. ¶¶ 1-3, Nov. 5, 2013, ECF No. 13; Answer ¶¶ 1-3, Sept. 24, 2013, ECF No. 6. His parents are Plaintiffs M.S. and J.S. See Am. Compl. ¶ 1; Answer ¶ 1. In this Memorandum and Order, "M.S." refers to the minor Plaintiff, not his parent.

       The IDEA requires that the DOE provide disabled students with a "free and appropriate public education" ("FAPE"). See IDEA, 20 U.S.C. § 1415(a); Am. Compl. ¶ 5; Answer ¶ 5.

1

"An appropriate public education under [the] IDEA is one that is 'likely to produce progress, not regression.'" Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 130 (2d Cir. 1998) (quoting Cypress-Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 248 (5th Cir. 1997)). As part of this obligation, the DOE must create an individualized education program ("IEP") for each disabled student at the beginning of each school year. See 20 U.S.C. § 1414(d)(2)(A). A parent may challenge an inadequate IEP through an impartial due process hearing held before the local school district's Impartial Hearing Officer ("IHO"). See id. § 1415(f); M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 224 (2d Cir. 2012). A party may then challenge the IHO's decision through an appeal to the State Review Officer ("SRO"), who is appointed by the State's Department of Education. See M.H., 685 F.3d at 224. A party "aggrieved" by the SRO's decision may challenge it by bringing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

### a. Procedural and Factual Background

On June 2, 2011, the DOE convened an IEP meeting for M.S. concerning the 2011-2012 school year; the DOE thereafter issued a Final Notice of Recommendation ("FNR") proposing that M.S. attend a 6:1:1 (six students to one teacher and one paraprofessional) special class program and that he receive related services. See Am. Compl. ¶¶ 11-12, Ex. A at 7-8. The DOE also recommended a twelve-month school year that would begin on July 1, 2011. Am. Compl. ¶ 8; Answer ¶ 8. On June 10, 2011, the DOE informed Plaintiffs that M.S.'s 6:1:1 class would be located at the Robert Randall School in Staten Island, New York. See Am. Compl. Ex. A. at 7-8. By letter dated June 26, 2011, Plaintiffs rejected the recommended placement. See Def. Mem. in Opp. to Pl. Mot. for Disc. ("Def. Mem.") Ex. 1, Oct. 29, 2013, ECF No. 14; Am. Compl. Ex. A. at 7-8. On or about July 27, 2011, Plaintiffs requested an impartial hearing to challenge the IEP,

and for reimbursement for tuition for the 2011-2012 school year at the McCarton School, a non-profit private school specializing in educating children with autism, and for related services. See Am. Compl. ¶¶ 13, 15, Ex. A at 8; see generally 20 U.S.C. § 1415(f). Plaintiffs ultimately filed four due process complaint notices, see 20 U.S.C. § 1415(c)(2), "alleging 71 procedural and substantive violations" related to the proposed IEP. Am. Compl. Ex. B at 6.

The IHO conducted hearings on September 14, 2011, November 2, 2011, November 8, 2011, January 31, 2012 and February 1, 2012. Among several witnesses called by Plaintiffs and the DOE at the hearing, the DOE called Ms. Dana Glennester ("Ms. Glennester"), the proposed July 2011 to August 2011 teacher, and Ms. Maria Gambino Dinnety ("Ms. Dinnety"), the Assistant Principal at the Robert Randall School. See Pl. Mem. in Support of Mot. for Disc. ("Pl. Mem.") 2, Oct. 25, 2013, ECF No. 9; Am. Compl. Ex. A. at 32-33.[1]

According to Plaintiffs, the Parties did not call any employee of the Robert Randall School to testify concerning the September-to-June portion of the school year. Pl. Mem. 2. Defendant has not submitted transcripts or other evidence contradicting this assertion.

The IHO issued a written decision on March 19, 2012. See Am. Compl. Ex. A at 1. The IHO concluded that the DOE failed to meet its burden of establishing the appropriateness of its recommendation for M.S. See id. at 16. The IHO found the IEP inappropriate because, inter alia, it recommended a 6:1:1 program despite the lack of evidence that M.S. "no longer required the 1:1 instruction he was receiving at the McCarton School." Am. Compl. Ex. A at 20.

---

[1] Although the IDEA, 20 U.S.C. § 1415(i)(2)(C)(i), specifies that the Court "shall receive the records of the administrative proceedings," the Plaintiffs have not filed the underlying IEP, four due process complaint notices, complete hearing transcripts or the exhibits received during the hearing. See Am. Compl. Ex. A at 32-35, Ex. B at 6; Def. Mem. Ex. 2 & 3 (two pages from the hearing transcripts).

On April 23, 2012, the DOE appealed the IHO's decision and, on March 8, 2013, the SRO reversed the IHO's decision. See Am. Compl. ¶¶ 8, 22-23; Answer ¶¶ 8, 22-23. The SRO found, inter alia, that the disagreement over a 6:1:1 or 1:1 program "amount[ed] to conflicting viewpoints among educators over the best manner in which to deliver special education instruction and services to the student," and did not constitute a denial of a FAPE. Am. Compl. Ex. B at 25. Plaintiffs filed this action seeking review and reversal of the SRO's decision. See 20 U.S.C. § 1415(i)(2); Am. Compl. ¶ 3.

### b. Plaintiffs' Motion for Discovery

Plaintiffs filed the present motion to conduct the depositions of the teacher and paraprofessional who would have taught M.S. at the Robert Randall School during September 2011 to June 2012. Pl. Mem. 1. These unnamed individuals did not testify during the hearings before the IHO. Id. at 2. Plaintiffs intend to "limit the teacher's and paraprofessional's depositions to one and a half hours each," "examine the witnesses before or after school," "examine the witnesses at a mutually agreeable location" and "can take these depositions immediately." Pl. Mem. 1 n.1.

This Court heard oral argument on Plaintiffs' motion on November 1, 2013. H'rg Tr., Nov. 1, 2013, ECF No. 12.

## II. DISCUSSION

Plaintiffs contend that the proposed depositions will be "relevant, non-cumulative and useful to determining whether or not M.S. was offered a FAPE for the 2011-2012 school year." Pl. Mem. 4. Plaintiffs allege that although the burden was on the DOE during the administrative

4

hearing,[2] the DOE failed to present evidence that the IEP for "the September-June portion of M.S.'s 2011-2012 school year was appropriate or that [D]efendant was 'likely' to be able to implement the mandates of its own [IEP] for M.S. during that period." Pl. Mem. at 2 (emphasis removed; citing Walczak, 142 F.3d at 130).[3] Plaintiffs did not seek to introduce such evidence, because under New York law, N.Y. Educ. Law § 4404(1)(c), Plaintiffs did not bear the burdens of production or persuasion during the IHO hearing. Hr'g Tr.6:1-4. Plaintiffs also state that, when they received the IEP, they were not aware that M.S. would be assigned to a different teacher after the summer. Pl. Mem. at 2. According to Plaintiffs, the proposed depositions will address the "gap" in the record concerning September 2011 to June 2012. Id.; see Hr'g Tr. 3:2-3.

---

[2] In Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 62 (2005), the Supreme Court noted that "the default rule" in IDEA cases was that "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." The Supreme Court declined to address whether "States may, if they wish, override the default rule and put the burden always on the school district," because the state at issue in Schaffer had no such burden-shifting law. Id. As the Second Circuit explained in M.H., "New York has amended its statutory scheme to reallocate the burden to the [school district], even in cases where the parents are challenging the IEP." M.H., 685 F.3d at 255 n.3 (declining to resolve whether this state statutory scheme may override the IDEA's burden scheme); see N.Y. Educ. Law § 4404(1)(c) ("The board of education . . . shall have the burden of proof, including the burden of persuasion and burden of production, in any such impartial hearing, except that a parent or person in parental relation seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement."); see also 2007 Sess. Law News of N.Y. Ch. 583 (A. 5396-A) (McKinney's) (the burden-shifting clause of N.Y. Educ. Law § 4404(1)(c) became effective October 14, 2007).

However, where the SRO "concluded that the IEPs were proper" and the plaintiffs seek additional review by the court, "the burden of demonstrating that the [SRO] erred is properly understood to fall on the plaintiffs." M.H., 685 F.3d at 255 n.3; see W.T. & K.T. ex rel. J.T. v. Bd. of Educ. of Sch. Dist. of N.Y.C., 716 F. Supp. 2d 270, 287 (S.D.N.Y. 2010) (stating that "the Court must defer to the SRO," and that it "is incumbent upon the Parents to bring to the Court's attention any procedural or substantive flaws and explain why they allegedly warrant reversal").

[3] See Hr'g Tr. 5:8-14 (according to Plaintiffs, at the hearing the DOE "did not speak to anything after the first day of the school year"); id. 12:21-24, 19:24-20:2 (according to Defendant, any additional evidence would be cumulative because the DOE's hearing witnesses testified concerning the alleged IEP deficiencies or lack thereof).

5

Defendant responds that the proposed depositions are "inadmissible and irrelevant retrospective evidence of the kind the Second Circuit expressly foreclosed in IDEA cases in <u>R.E. v. New York City Department of Education</u>, 694 F.3d 167 (2d Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 2802 (2013)." Def. Mem. 1. The DOE further responds that the proposed depositions would be cumulative of evidence already in the record. Hr'g Tr. 12:21-24, 19:24-20:2. The DOE notes that Plaintiffs rejected the IEP without raising any concern "related to a teacher or paraprofessional the Student could have been assigned [to in] the following September." Def. Mem. 1. The DOE argues that Plaintiffs could have subpoenaed the proposed deponents during the administrative hearing and that Plaintiffs seek an impermissible second bite at the apple. <u>Id.</u> at 2; Hr'g Tr. 13:13-16. Moreover, the DOE asserts that there is no definitive proof that M.S.'s teacher would have changed in September 2011, and the DOE can only speculate as to which teacher and paraprofessional would have taught M.S. as of September 2011. Def. Mem. 2; <u>see</u> Hr'g Tr. 21:16-25:23.

### a. "Additional Evidence" Within the Meaning of the IDEA

Pursuant to the IDEA, 20 U.S.C. § 1415(i)(2)(C), this Court "shall hear additional evidence at the request of a party." "Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1471 (9th Cir. 1993); <u>see</u> <u>M.L. v. N.Y.C. Dep't of Educ.</u>, No. 13 Civ. 0574 (ALC) (JLC), 2013 WL 1891378, at *1 (S.D.N.Y. May 7, 2013) (same). Moreover, the IDEA contains "no specific restriction, such as in ERISA cases, that prevents a party from discovering information beyond the administrative record." <u>Jordan S. v. Hewlett Woodmere Union Free Sch. Dist.</u>, No. 08 Civ. 1446 (LDW) (AKT), 2009 U.S. Dist. LEXIS 27460, at *11

(E.D.N.Y. Mar. 31, 2009) (quoting H.H. ex rel Hough v. Indiana Bd. of Special Educ., No. 06 Civ. 551 (TLS), 2007 WL 2914461, at *2 (N.D. Ind. Oct. 03, 2007)) (allowing parties to conduct limited discovery).

### i. Guidance From Other Circuits Concerning Additional Evidence

The Second Circuit has not explicitly determined what constitutes "additional evidence" within the meaning of the IDEA. See Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380 (2d Cir. 2003) (noting, without discussion, that courts reviewing IDEA cases must "tak[e] into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties").

The first published appellate court decision to address the issue was Town of Burlington v. Department of Education for the Commonwealth of Massachusetts, 736 F.2d 773 (1st Cir. 1984), aff'd sub nom. on other grounds, Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359 (1985). In Burlington, the First Circuit noted that it had found "no legislative history to guide [it] on the construction to be given to 'additional evidence.'" Id. at 790 n.20. The court interpreted "additional" to mean "supplemental," so that witnesses could not "repeat or embellish their prior administrative hearing testimony." Id. at 790. The court declined to hold that "the appropriate construction is to disallow testimony from all who did, or could have, testified before the administrative hearing," as such a rule would "unduly limit a court's discretion and constrict its ability to form the independent judgment Congress expressly directed." Id. at 790. However, "[i]n ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of

7

judicial resources." Id. at 791. Several Circuits have adopted the Burlington standard or cited it with approval.[4]

The Sixth Circuit, however, rejected Burlington to the extent that it "suggests that additional evidence is admissible only in limited circumstances, such as to supplement or fill in the gaps in the evidence previously introduced." Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Cook, 915 F.2d 232, 234 (6th Cir. 1990). The Sixth Circuit endorsed a less restrictive approach, reasoning that the ordinary meaning of "additional" is not "supplemental," but "something that is added"; thus "the limitation on what can be joined inherent in the term 'supplement' is not present in the term 'add.'" Id.[5]

Some Circuits have not explicitly accepted or rejected the Burlington standard, and they have instead suggested additional considerations. See Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 759-60 (3d Cir. 1995) (declining to "explicit[ly] interpret[]" the additional evidence clause, but stating that courts must "consider evidence [that is] relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved . . . i.e., would the evidence assist the court in ascertaining whether Congress' goal has been and is being reached for the child involved").[6]

---

[4] See E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings, 652 F.3d 999, 1004-1005 (9th Cir. 2011) (recognizing that the Ninth Circuit has adopted the Burlington standard); Sch. Bd. of Collier Cnty., Fla. v. K.C., 285 F.3d 977, 981 n.4 (11th Cir. 2002) (recognizing that the Eleventh Circuit has endorsed the Burlington standard); Springer v. Fairfax Cnty. Sch. Bd., 134 F.3d 659, 666-67 (4th Cir. 1998) (adopting the Burlington standard); Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L., 102 F.3d 895, 901 (7th Cir. 1996) (citing Burlington with approval).

[5] See Deal v. Hamilton Cnty. Bd. of Educ., 392 F.3d 840, 851 (6th Cir. 2004) (recognizing that the Sixth Circuit "has rejected the narrowness of the Burlington analysis, choosing instead to give great latitude to district courts").

[6] See also D.K. v. Abington Sch. Dist., 696 F.3d 233, 253 (3d Cir. 2012) (the court may not summarily reject additional evidence, "but the court need not consider evidence that is irrelevant

8

Nevertheless, the Circuits generally agree that "the question of what additional evidence to admit in an IDEA judicial review proceeding, as well as the question of the weight due the administrative findings of fact, should be left to the discretion of the trial court." Susan N., 70 F.3d at 760 (listing cases); Deal, 392 F.3d at 850 (stating that "the determination of which additional evidence to allow rests within the sound discretion of the district court").

### ii. The Second Circuit's Prohibition on Retrospective Evidence

Although the Second Circuit has not articulated a standard for "additional evidence," it recently forbid considering "retrospective evidence" to "effectively rehabilitate[] or amend[] after the fact" a deficient IEP. R.E., 694 F.3d at 185. "In determining the adequacy of an IEP, both parties are limited to discussing the placement and services specified in the written plan and therefore reasonably known to the parties at the time of the placement decision." Id. at 187.[7] Parents cannot rely on "[s]peculation that the school district will not adequately adhere to the IEP . . . ." Id. at 195.[8] They also cannot rely on speculation concerning the adequacy of

---

or cumulative"); Indep. Sch. Dist. No. 283 v. S.D. by J.D., 88 F.3d 556, 560 (8th Cir. 1996) (the movant must "present 'solid justification' to expand the administrative record").

[7] The Court noted that an "important feature of the IDEA" was that its procedures include a "resolution period" in which parents must identify any deficiencies in the IEP, so that they "are precluded in later proceedings from raising additional defects in the IEP that they should have raised from the outset . . . ." Id. at 187-88.

[8] Of course, the court may consider evidence (not mere speculation) that the school will not adhere to the IEP. See T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 420 (2d Cir. 2009) ("We emphasize that we are not holding that school districts have carte blanche to assign a child to a school that cannot satisfy the IEP's requirements."). For example, in B.R. ex rel. K.O. v. New York City Department of Education, 910 F. Supp. 2d 670 (S.D.N.Y. 2012), a case relied on by Plaintiffs, see Pl. Mem. 2 n.3, 3 n.4, the court concluded that the school failed to prove it would provide the student with the 1:1 occupational therapy mandated by the IEP when the assistant principal testified at the administrative hearing to a district policy of group occupational therapy and could not state how many students, if any, received 1:1 occupational therapy. B.R., 910 F. Supp. 2d at 676-79. The SRO had found the parents' concern about 1:1 occupational therapy "speculative" because the student did not enroll at the school for the relevant year and the SRO concluded that there was insufficient evidence that the school would have deviated from the IEP.

unknown teachers. Parents "may have no guarantee" that their child will be taught by any specific teacher or paraprofessional; "[i]ndeed, even the Department [of Education] cannot guarantee that a particular teacher or aide will not quit or become otherwise unavailable for the upcoming school year." R.E., 694 F.3d at 187.

However, the Court declined to adopt a "four corners" rule that would only allow testimony about the specific services mentioned in the IEP. Id. at 185-86. "While testimony that materially alters the written plan is not permitted, testimony may be received that explains or justifies the services listed in the IEP." Id. at 186.

### iii. Recent Second Circuit Cases Concerning Discovery of Additional Evidence

In determining what additional evidence should be admitted, courts in this Circuit have considered both the First Circuit's guidance that "the administrative record should be the main source of evidence with limited additions," and the Third Circuit's guidance that "the district court should consider additional evidence that is 'relevant, non-cumulative, and useful.'" Eschenasy v. N.Y.C. Dep't of Educ., 604 F. Supp. 2d 639, 649 (S.D.N.Y. 2009) (citing Burlington, 736 F.2d at 790-91 and quoting Susan N., 70 F.3d at 760); see Pl. Mem. 2-3 (citing Eschenasy); Hr'g Tr. 18:4-23, 28:2-4 (the Parties agreed that the "relevant, non-cumulative, and useful" test articulated in Eschenasy should apply in this case). In Eschenasy, the court denied admission of an affidavit that was duplicative of hearing testimony, but it allowed admission of school transcripts that pre-dated the hearing and contradicted defendants' assertions. Eschenasy, 604 F. Supp. 2d at 649. The court weighed the three factors named in Susan N. against one

---

Id. at 677-78. The court declared the SRO's decision to be "not only factually inadequate but also legally erroneous, for it implicitly reversed the burden on the school district to prove that the proposed placement was adequate." Id. at 678; see D.C. ex rel. E.B. v. N.Y.C. Dep't. of Educ., No. 12 Civ. 1394 (JGK), 2013 WL 1234864, at *12, 14-16 (S.D.N.Y. Mar. 26, 2013) (granting summary judgment for the plaintiffs where the IEP mandated that the placement be seafood-free due to student's allergy, and the placement was not seafood-free).

another and against procedural considerations (such as that a proposed affiant had testified at the hearing), and did not require the movant to establish the existence of each factor. Id. The court concluded that although the transcripts were "duplicative" of hearing testimony, they should nevertheless be admitted because "the usefulness of these transcripts outweighs any procedural considerations weighing against their admission." Id. at 649; see G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 751 F. Supp. 2d 552, 555 (S.D.N.Y. 2010) (allowing nine additional exhibits and explaining that "courts generally accept evidence that was not withheld in bad faith, is relevant, and does not change the administrative review into a trial de novo"), aff'd sub nom., G.B. v. Tuxedo Union Free Sch. Dist., 486 F. App'x 954 (2d Cir. 2012).

Several recent district court decisions discuss the availability of additional discovery in IDEA cases. The court in M.L., 2013 WL 1891378, considered facts very similar to those in this case, in that the defendant called the student's proposed summer teacher and assistant principal to testify before the IHO, and the plaintiffs sought as "additional evidence" the deposition of the teacher who would have taught the student from September to June. Id. at *2. As in this case, the parents in M.L. rejected the offered placement prior to July, the start of the school year, and the student never attended either the summer teacher's or the September-to-June teacher's class. Id. at *2 n.2. The court in M.L. allowed the additional discovery, reasoning that,

> [w]ith an evidentiary record that includes [the testimony of the proposed summer teacher], the Court believes it is appropriate to complete the record by giving Plaintiffs the opportunity to take the two proposed depositions. While on some level the testimony Plaintiffs seek may be "speculative," as Defendant suggests, it is no more so than the testimony already in the record. That will be for the district judge ultimately to determine in reviewing the SRO's decision.

Id. at *2 n.2. The court noted that in R.E., the Second Circuit "explicitly rejected a rule prohibiting testimony that goes beyond the face of the IEP" and allowed explanatory testimony.

11

Id. (citing R.E., 694 F.3d at 186). The court also noted that it was "not precluding Defendant from making any arguments with respect to the admissibility of this evidence should Plaintiffs choose to use it in support of their summary judgment motion." Id. at *3.

The court in M.S. v. New York City Department of Education, No. 12 Civ. 3533 (NG) (RML) (E.D.N.Y. Jan. 30, 2013), aff'd, No. 12 Civ. 3533 (E.D.N.Y. Apr. 23, 2013) (ECF No. 24), reached the opposite conclusion, finding that because "the evaluation of the adequacy of an IEP must be prospective, not retrospective," the testimony of the students' proposed teacher for September through June would be irrelevant. Id. (citing R.E., 694 F.3d at 186); see Def. Mem. 2 (citing M.S.). The teacher's proposed testimony was not limited to what the parties knew at the time of the placement decision; rather, "[h]er personal knowledge is of facts beginning in September, 2011 and would thus be retrospective and at odds with the ruling in R.E." M.S., No. 12 Civ. 3533 (E.D.N.Y. Jan. 30, 2013). In fact, in a later decision, the district judge further explained that the proposed deponent was only hired a few weeks after the parents rejected the IEP. M.S. v. N.Y.C. Dep't of Educ., No. 12 Civ. 3533 (NG) (RML), slip op. 13 n.5 (E.D.N.Y. Nov. 5, 2013) (ECF No. 46); see Defs. Letter, Nov. 6, 2013, ECF No. 15.

Similarly, the court in F.L. v. New York City Department of Education, No. 11 Civ. 5131 (RJH) (S.D.N.Y. Nov. 3, 2011), ECF No. 6, denied plaintiffs' request to depose two administrators concerning the school's record of providing certain services to disabled students. The court utilized a balancing test similar to that used in Eschenasy, reasoning that although the school's "history of failing to—or succeeding in—fulfill[ing] its promises under IEPs" was relevant, the proposed depositions were not warranted because the plaintiffs did not satisfactorily explain their failure to call these witnesses to testify before the IHO; moreover, witnesses providing similar testimony had already testified. Id. at 8; see Def. Mem. 2 (citing F.L.). Thus,

12

"such testimony—even from different persons—would be duplicative of the administrative record in this case . . . ." F.L., No. 11 Civ. 5131, slip op. at 9 (S.D.N.Y. Nov. 3, 2011).

Nevertheless, the court in F.L. allowed plaintiffs to submit new documentary evidence concerning the school's service record because providing this report was "relatively simple" and would not materially prejudice the defendant, even though the document was available at the time of the hearing and constituted cumulative evidence. Id. The court later granted the defendant's motion for summary judgment, finding, inter alia, "several reasons why the reports [concerning the school's failure to provide services to some children] should be afforded limited weight." F.L. ex rel. F.L. v. N.Y.C. Dep't of Educ., No. 11 Civ. 5131 (RKE), 2012 WL 4891748, at *15-16 (S.D.N.Y. Oct. 16, 2012).

### b. Plaintiffs' Request for Discovery

The IDEA's mandate that courts "shall hear additional evidence at the request of a party," 20 U.S.C. § 1415(i)(2)(C), presents an unusual statutory scheme in which the parties may supplement the administrative record prior to review. However, the question before this Court is not whether the proposed depositions are admissible, but whether they may be conducted. The standard for admitting additional evidence in IDEA cases may be unsettled in this Circuit, but it is undisputed that the decision lies squarely within the court's discretion. So, too, does the decision whether to allow limited discovery of the type contemplated by Plaintiffs. Indeed, a plaintiff's right to conduct depositions is normally quite broad. See Fed. R. Civ. Proc. 30; Ratliff v. Davis Polk & Wardwell, 354 F.3d 165, 170 (2d Cir. 2003) (requiring broad and liberal treatment of discovery rules). For the reasons discussed below, Plaintiffs may conduct the limited additional discovery they seek. However, this Court expresses no opinion as to whether

the evidence, which has yet to be gathered (let alone proffered), will ultimately be admissible or what weight it should receive if it is admitted.

As the Parties agreed, see Hr'g Tr. 18:4-23, 28:2-4, the standard adopted in Eschenasy—that "the district court should consider additional evidence that is 'relevant, non-cumulative, and useful'"—should be applied in this case. Eschenasy, 604 F. Supp. 2d at 649 (quoting Susan N., 70 F.3d at 760). However, Eschenasy concerned the admission of evidence that had already been collected and then reviewed by the court, not the availability of additional discovery. Nevertheless, the principals articulated in Eschenasy, Burlington and Susan N. have informed courts considering requests for additional discovery. See M.L., 2013 WL 1891378; M.S., No. 12 Civ. 3533 (E.D.N.Y. Jan. 30, 2013); F.L., No. 11 Civ. 5131 (S.D.N.Y. Nov. 3, 2011).

Plaintiffs' proposed limited discovery is warranted because it may elicit relevant and useful information concerning the merits of the parents' reasons for rejecting the IEP and the DOE's ability to implement the IEP. In their initial written objection to the IEP, Plaintiffs raised concerns about deficiencies in the school including, inter alia, the demeanor of a specific paraprofessional; overly crowded therapy rooms; therapy taking place off-site; too great a variation in students' ages and abilities within one classroom; and inappropriate curriculum and academic programs. See Def. Mem. Ex. 1. Each of the complaints concerned a contemporaneous objection about conditions at the school and a rational prediction that many, if not all, of these conditions would continue prospectively during the proposed school year of July to June.

Discovery concerning some of Plaintiffs' concerns may not be relevant or useful. For example, there is no guarantee that a student will receive a particular instructor, see R.E., 694 F.3d at 187, and the proposed deponents may not have any personal knowledge of the observed

14

paraprofessional's behavior on June 22, 2011. See Def. Mem. Ex. 1. However, the proposed deponents—a teacher and a paraprofessional—are likely to have personal knowledge concerning the school's policies, practices, facilities and future plans, as of June 2011, concerning expected room size, class size, class composition, off-site services and curriculum and academic programs during the 2011-2012 school year.

The Second Circuit made clear in R.E. that the court's inquiry must focus on what was "reasonably known to the parties at the time of the placement decision," R.E., 694 F.3d at 187, which in this case was in June 2011. This limitation is focused on the chronological context of the deponent's knowledge—when the information became known to him or her—and not on the time the testimony was given. Indeed, it appears that Ms. Glennester testified on November 8, 2011, months after the summer portion of the school year concluded, and Ms. Dinnety testified mid-year, on January 31, 2011. See Def. Mem. Exs. 2 & 3. The parties have not suggested that Ms. Glennester's or Ms. Dinnety's testimony was inappropriately retrospective, despite their testimony occurring after June 2011. Plaintiffs' proposed deponents are likely equally capable of providing testimony that is not speculative or retrospective. See M.L., 2013 WL 1891378, at *2 n.2. The proposed deponents can avoid providing retrospective testimony by focusing on what they knew in June 2011, not what they learned during the 2011-2012 school year.

Although it is possible that the proposed depositions may prove cumulative, there has been no suggestion that either Ms. Glennester or Ms. Dinnety testified specifically about the September-to-June portion of the school year. See Def. Mem. Exs. 2-3 (providing one page of each transcript). Moreover, one or two deponents' testimony on a particular subject does not necessarily render all future inquiries cumulative.

One factor that weighs in favor of denying Plaintiffs' request is Plaintiffs' failure to call the proposed deponents at the hearing. See Burlington, 736 F.3d at 790-91. Plaintiffs claim they did not call these witnesses because the DOE bore the burden of proof at that stage. See Hr'g Tr. 6:1-4.[9] Plaintiffs further assert that they were initially unaware that M.S.'s teacher might change after Summer 2011, but after Ms. Glennester testified on November 8, 2011, Plaintiffs could have subpoenaed additional witnesses for the January 31, 2012 or February 1, 2012 hearing dates. See Pl. Mem. 2; Def. Mem. Ex. 2; Am. Compl. Ex. A at 1. In addition, Plaintiffs could have questioned Ms. McGinley concerning her June 2011 knowledge of the September 2011 to June 2012 term when she testified on January 31, 2012. See Def Mem. Ex. 3. Nevertheless, in light of the shift in the burden of proof from the initial hearing to this proceeding, the failure to introduce evidence available during the administrative hearing is not determinative here. For example, the courts in Eschenasy, M.L. and F.L. allowed the discovery or admission of limited additional evidence that could have been presented during the administrative hearing, based on the relevance or potential relevance of that evidence and the ease of its production. In this case, the District Court may yet determine that the evidence is inadmissible, but the potential relevance of the proposed testimony has been sufficiently established to warrant discovery.

Moreover, Defendant's concern about delaying the resolution of this case, see Def. Mem. 1, is unfounded. Plaintiffs propose no more than three hours of deposition and have offered to take the depositions "immediately" and at a time and location convenient for the witnesses. See Pl. Mem. 1 n.1.

---

[9] It is not clear what effect, if any, the burden of proof played in the reasoning of the court in Burlington, 736 F.2d at 791, as to the admission of additional evidence. In that case, the court placed the burden of proof on the school district attempting to overturn an agency finding against it. Id. at 779, 794. However, the court did not specify which party or parties sought to introduce additional evidence. Id. at 790-91.

16

Finally, Defendant contends that it can only speculate as to whether M.S. would have remained with his Summer 2011 teacher from September 2011 to June 2012 and, if not, which teacher would have taught him during that time. See Hr'g Tr. 21:16-25:23. Of the five students in the proposed Summer 2011 class, one student graduated and the remainder were assigned to other teachers for the rest of the school year. Id.; Def Mem. Ex. 3. Based on these facts, the exact identities of M.S.'s September 2011 to June 2012 teacher and paraprofessional are speculative and not useful. Plaintiffs' motion is denied to the extent they seek these identities. However, as discussed above, Plaintiffs may conduct the proposed depositions to obtain evidence concerning what was known, as of June 2011, about the September-to-June portion of the 2011-2012 school year. It is likely that at least some of the teachers and paraprofessionals assigned, in September 2011, to teach M.S.'s proposed summer classmates will have personal knowledge of these facts. However, it is certainly possible that the proposed witnesses lack personal knowledge—for example, if they were hired after June 2011. See M.S., No. 12 Civ. 3533 (NG) (RML), slip op. 13 n.5 (E.D.N.Y. Nov. 5, 2013).

Therefore, the DOE will identify to Plaintiffs the teachers and paraprofessionals who were assigned to teach, in September 2011, the four non-graduating students taught by Ms. Glennester during the Summer of 2011. The DOE will also notify Plaintiffs of 1) the age range of the students in those teachers' and paraprofessionals' September 2011 classes, see Hr'g Tr. 23:11-18, and 2) whether the DOE currently has reason to believe the potential witnesses lack relevant personal knowledge because they were hired after June 2011 or for another substantive reason. Providing this information should not prove overly burdensome, as it involves, at most, contacting or reviewing the records of four teachers and four paraprofessionals. See Hr'g Tr. 24:13-23; see also id. 21:16-23:18. Plaintiffs may then select for deposition one teacher and one

17

paraprofessional from among those identified.[10]  The depositions will be conducted in the concise, timely and mutually convenient manner that Plaintiffs suggested.  Pl. Mem. 1 n.1.

### III.     CONCLUSION

For the reasons stated above, Plaintiffs' motion for discovery is granted in part and denied in part.  On or before November 22, 2013, the DOE will identify and provide the related information described above concerning the teachers and paraprofessionals who, in September 2011, were assigned to teach M.S.'s proposed summer classmates.  On or before December 6, 2013, Plaintiffs may conduct the two depositions, subject to the limitations described above.  Plaintiffs' request to identify the specific teacher and paraprofessional who would have taught M.S. in September 2011 to June 2012 is denied.

On or before November 22, 2013, the Parties will file on ECF a joint proposed schedule for the conclusion of discovery, including any expert discovery.

**SO ORDERED.**

Dated:  Brooklyn, New York
           November 12, 2013

/s/
VERA M. SCANLON
United States Magistrate Judge

---

[10] In lieu of identifying an appropriate teacher and paraprofessional, the Parties are free to agree to the depositions of two alternate, appropriate witnesses, under the same terms discussed in this Memorandum and Order.

18